Good morning and may it please the court. My name is James Dickey. I'm here on behalf of the Plaintiff Appellant Polly Sorcan. I'm here joined with my colleague Austin Lissy and also the Plaintiff Appellant Polly Sorcan is here with me in the courtroom. We're here today because the Rock Ridge School District through its board censured and then stripped Director Polly Sorcan of committee assignments because of her speech and then kept her shut out of committees for 19 months. They tried to use the Minnesota Open Meeting Law as a pretext to keep her from even attending committee meetings in any capacity to inform herself. These actions were retaliation for public advocacy as a board member and would chill a person of ordinary firmness from pursuing that advocacy. They thus violated the First Amendment in Section 1983 and so we ask this court to reverse and remand for discovery to proceed. And before I dive in any further, I'd like to welcome any questions the court has at the outset. With none, I'd say that the court faces four questions on this appeal. Judge Smith? Judge Smith Yes, I'm sorry. I had my mic muted when I was asked to speak. The first question is, has the plaintiff appellant been submitted to the court here in the last couple of days and what they mean to the proceeding today? Yes, Your Honor. So, obviously, as the Plaintiff Appellant, never looking for a reason to tell the court about mootness or facts bearing on it. But in November, Polly Sorcan was removed from the school board by a vote of the school board and she does plan to run for re-election as I understand it. I wanted to bring that fact to the court's attention because the opposing side has argued for mootness as to prospective and injunctive relief, which are two of the paragraphs of the prayer for relief in this case. Our view is that it's not moot no matter what. It wasn't moot before and it's not moot now because of the possibility of once Ms. Sorcan takes her seat back, which she's won 22 years out of the last 38, I think, she'll be back in the same position with the board that could do the same thing again to her. So, I don't think it makes any difference as to mootness, but I thought it was important as I was preparing. I assumed that this might be raised by the other side and I, as I was preparing, I read the Arizonans for Official English case and thought I had better provide this to the court as opposed to letting it go and the court not knowing. Does it moot any of your relief? In other words, she can't get committee assignments back. She can't, I mean, we don't know if she's going to win again. I mean, it does show that they're taking action against her. So, in that sense, but I'm just wondering about specific forms of relief. Well, I don't want to suggest because those facts are not, there's not been a motion for judicial notice or anything like that yet. The court hasn't asked for briefing. We haven't filed any supplemental complaints because this case is on appeal and we haven't gone back to the district court on remand. So, I am not suggesting that the court can look at the, on November 19th, board action as an initial evidence of retaliation. I want to be clear about that. I'm not, I'm not here trying to sneak that into this court proceeding and I think that the suggestion to the alternative is incorrect. Anyway, the other, as to the issues related to how this affects the allegations in the complaint, we, I would recognize that when you remove someone from the board, as opposed to them being on the board and having fewer committee assignments, that makes it more difficult for our side in terms of whether or not the case is moot. Full disclosure, I think that has to be the case. But the doctrine, the mootness doctrines that would, and the exceptions to mootness that apply, potentially voluntary cessation or the capable repetition or evading review doctrine would still apply here. And again, when you have a situation where someone like Polly Sorkin, who has won board proceeds 22 of the last 38 years, like I mentioned, she very well may win in April, maybe even before this court makes a decision, to hold that the prospective and injunctive relief claims are moot at this point, I think would be premature under those circumstances. And that's why there are exceptions to the mootness doctrine. So I think, I think that's the, the answer that I've got for the court. Well, I'd like to briefly mention here that it's really important that the court look at this legislative immunity issue very closely and tease out the difference between the school district, which is a Monell defendant, and chair, board chair Bill Addy, who is sued only in his official capacity. He's a local official. And he is sued because the board's formal policy says that the board chair is supposed to make committee appointments. So he is, his role in this lawsuit is really only about the prospective relief that we could get. He's not, his vote is part of the lawsuit. I acknowledge that's how it's pleaded. But if you look at paragraphs, I think, I think it's 87 to 94 of the complaint. When it talks about chair Addy, it's talking about what he could do in the future. So when you're looking at a legislative immunity issue, it's not the question, the question is not, did Addy vote for this and is his vote immune? The question is also, is his decision whether or not to appoint people to committees, is that immune? And that is not a legislative act. That is a purely internal administrative act. And we'd also note, of course, that the board doesn't even follow that policy, like it doesn't follow many of its policies. The board chair doesn't in practice actually appoint people to the committees. They are voted on by the whole board. And then, and I think the March 2021 and February 2023 minutes would show that. There's a full vote by the board as to who's going to be on what committees. And likewise, the full board made the decision to strip Polly Sorkin of her committee assignments. So as it relates to legislative immunity, Chair Addy would not be immune for the sole reason that his appointment or removal function that he has, he's a necessary defendant because of that policy in this case. That's the only reason he's here. If it was, you know, Stacey Shoals or if it was Tim Riordan, who were former board chairs, if it was them, it wouldn't matter who's wearing that seat. The policy says it, so therefore, they're in the case as a defendant. But as a... Could you just address, so if, I think this is true under Supreme Court case law, which is if this were a state official, say the Speaker of the House or something like that, and we had the exact same thing, somebody challenging committees, it appears that in these circumstances, there would be legislative immunity. But then we have that footnote, I think in Justice O'Connor's opinion, that seems to suggest not force local, I can't figure that out. It seems internally contradictory. Maybe it's sovereign immunity, I don't know. But I just wanted to get your take on it. I would suggest to the Court that the difference between local officials and state officials or Federal officials is the same difference between municipalities and State or Federal government. The Congress has decided by virtue of Section 1983, the Civil Rights Act, to abrogate immunities across the board for municipalities. And so local officials are the ones sitting on those municipal boards. That's the way I would explain why there's a difference between local officials versus State officials. Having said that, if you're just looking at it from a pragmatic perspective, the Supreme Court has said in the Umber case that you mentioned that footnote, the star footnote, that there is no immunity for official capacity defendants compared, unlike individual capacity defendants. And we're not saying, of course, that if we sued them in their individual capacity, I would agree that legislative immunity would apply because you can't have local officials in their individual capacity be subject to personal liability. But this is an official capacity suit. And the Supreme Court in Monell made it really clear that official capacity, I'm sorry, municipalities are subject to suit under Section 1983. And there's a whole history of why the Congress made that decision. And that's where we're at. And similarly, local officials are not immune. I would just point out, I think there's a little bit of confusion partly because of the Bogan v. Scott Harris case that came afterwards. And I would just note that in Scott v. Taylor, the 11th Circuit decision in 2005, interpreting Bogan v. Scott Harris, it pointed out we, the Court doesn't say whether or not these are individual capacity or official capacity local officials. I have not seen any case that is attached, except for I think the Whitener case in the Fourth Circuit, but I have not seen any case that has said the Supreme Court's precedent says that local officials get this kind of immunity. And you can imagine also there's a strong pragmatic reason why you would not want to assign immunity to so-called legislative acts and allow even the defense to be raised really for that matter. And the reason for that is think about what local school districts have done in the history of this country. Think about going back to Brown v. Board of Education and segregation that existed prior to that decision and the implementation of that decision. School boards could vote to segregate schools. School boards could vote to take away First Amendment rights. School boards could vote to discriminate against people. And that's why, and the Supreme Court said in Pembauer v. City of Cincinnati, a vote of a legislative body can give rise to Monell liability. That's why those municipalities are subject to suit. That's why they must be subject to suit, because this Court has to be against this kind of retaliation. And even if you disagree with us on the merits, the point is that Pollyanna Sorkin has to have her day in court when she has adequately alleged that there is adverse action against her because of her protected speech. And with that, I would like to move briefly on to the merits before I run into my rebuttal time. I would just note that the Court looking at this case. Underlying your claim for retaliation. Thank you, Your Honor. Excellent. I would point the Court to Joint Appendix pages 13 and 14, 16, and 23 through 24. That's the complaint paragraph 68, 81 through 82, and 120 through 121. And what is really clear is that this resolution, this censure resolution, which included with it a stripping of committee assignments, said that they are angry at Polly Sorkin for undercutting the District's mission on social media. Clear evidence that they are targeting her social media. They said that she's unwilling to accept the direction of the Board Chair. I mean, she has her own opinions, and she voices them. She asked questions was one of the things that the resolution targeted. I think these are pretty clear evidence in the resolution itself, plus all, you know, we've cited in the complaint an article written by John Ramos that goes into a litany of abuses against Polly Sorkin while she was serving as director before all this happened, leading up to this. Really because she asked hard questions, she wants fiscal responsibility, she wants to represent her constituents well, and the Board took, in my view, unreasonable offense to that. So as I see it, Your Honor, those pages and those paragraphs that I mentioned are the best evidence of the motivation for the animus, and on top of that, I don't think the appellees are really contesting whether or not she engaged in protective activity. I think it's more, and they can, of course, answer for themselves, but I see it more as their view that under the Wilson case and its progeny, that this doesn't rise to the level of adverse action that the committee removal is. It is not sufficient. I'm running into my rebuttal time, so I'd like to is adverse right now, and then reserve the rest if that's okay. So I would just note that whether or not committees have the authority and power that Polly Sorkin alleges and believes that they do have, there's a dispute, it seems like, about whether or not the superintendent made a decision to move boys hockey from A to AA. There's a dispute, it seems like, about whether or not they are truly advisory or if they're boards agenda by deciding what issues actually come before the board out of committee. Those are all fact disputes that should be decided in discovery. Those are not disputes that should be decided at Rule 12. We have pleaded, and I think the public record shows as well, and it supports us, that we have demonstrated that committees do wield a lot of authority in this particular body, and whether or not that's true, as a matter of fact, summary judgment could find out, but at this stage, I don't think it's appropriate for the motion to dismiss to have been granted. Of course, the district court didn't reach that, but on the alternative ground, we want to make it clear that we think that this case should go to summary judgment, and, you know, we'll see what the facts show. But counsel, you do accept there is a difference between the board voting to remove her from the board as opposed to the board or a chair on the board not assigning her to committees? Yes, Your Honor. There is a difference between removal from the board entirely, that would clearly be a conduct that would be a violation of the First Amendment if it were, if it satisfied the other elements of the retaliation test. Removal from committees obviously doesn't take away all the trappings of office, but we are saying that under the Wilson case, what the court said was, it didn't say you had to take away all trappings of office. It didn't say that you had to make someone only able to show up, you know, shuffle into the board room, vote yes or no on every agenda item, and then walk out, and that's all you can do. I think that there's a, there's a, there's a, this isn't a play in the joints after the Wilson case, and I think that the Wilson case contemplated the case exactly like this one, where there would be enough for a First Amendment claim. Counsel, am I correct on the facts here? Ms. Horkin was able or actually did attend committee meetings, though not an official member of those committees. She did attend the committee meeting she wanted to attend? Yes, Your Honor, she did. She did, even though she was almost physically prevented from doing so, was told in a resolution that if she did so, that they were considering it a violation of open meeting law, and I would say that it's an objective test as to whether or not a person of ordinary firmness would be chilled by that. So, I'm running, I just point out that it is an objective test. So, yes, Polly Sorkin has made us sterner stuff, as Shakespeare might say, but this is an objective test, and she, a person of ordinary firmness would be chilled by those actions of the school district. So, I'll reserve the last 30 seconds I have for rebuttal, if that's all right. We'll give you a minute. Thank you. You bet. Mr. Helmers? Counsel, would you give us your take on the letter submitted to the court here in the last hour? I would respectfully agree that I do not believe that that is now an issue in this case. That is not part of the pleading. I do think that it may go to the question of mootness. However, I believe that mootness had already been addressed and argued by us regarding some of the injunctive relief that was being requested. It was already moot. It remains moot at this point, I would say, in a slightly different context. I would be happy to do additional briefing on mootness if the court would like, as we simply received this letter Monday night. However, I think that for decision today, we really are looking at the issue of the injunctions and the other grounds for relief. We were already arguing that they were moot. We would argue that they remain moot and potentially even more so now. Well, the problem I think you have is now, I mean, I don't know what the reasons for the dismissal were. I don't have any idea. But it at least draws into a lot of doubt whether or not this case is overall moot because it's another action taken against Ms. Sorkin. If it was in any way related to the free speech, it only goes to show that she continues to suffer adverse consequences from it. Again, I'm speculating, but it makes it a lot messier for the school district. Sure. And I would argue, we're not arguing at this point that the entire case is moot. And I think that the reason why is because there are those, they were asking for perspective relief, yes, but they also were requesting damages. And so the damage claim remains. However, I would again point out that the facts related to that matter are not at issue. They are not before this court. And I'm not even going to comment and respond on the question of whether it's related other than to say that that is a separate issue. Turning to kind of the general status of this case, I do want to say at the outset, based on some of the comments that were made and the briefing, that this was a board member who violated multiple district policies, including the board's rules of procedure and decorum, as well as the rules and laws governing data privacy. This was a legislative process. In the legislative process, the board voted to censure and remove appellant from advisory committees for her misconduct, for her conduct. Cases about a board member now who was outvoted didn't get her way and is seeking to weaponize the First Amendment, which courts have said over and over again should not be used as a weapon. Let's talk a little bit about that because doesn't it have to be in the sphere of legitimate legislative activity? And it's pled that some of these decisions were made in violation of open meeting laws, which might make it an illegitimate legislative activity. And then the second half of that, so that's sort of one prong I'm asking about. But the second prong, our Eighth Circuit case, the Griesenauer case, seems to be in conflict with Whitener, the Fourth Circuit case. And we use a more functional approach to determine whether it's a legislative activity. And there we're looking at sort of future public policy legislation, that sort of thing. And so I'm wondering how it can be a legitimate legislative activity if it's in violation as pled, and we're at a dismissal stage, as in violation of the open meeting laws, and removal from committees doesn't look like legislation to me. Sure. Thank you, Your Honor. And to the first point, I don't believe that the allegation is that the action of the board was done in violation of the open meeting law. The censure was done at a called meeting where it was on the agenda, where all of the, you know, all of the board members were there, the public was there, this was a regular meeting, properly called. So there's no, there's actually no allegation that it violated the open meeting law at the meeting where the censure was taken. Instead, there was a lot of discussion regarding the open meeting law related to committee meetings. And so that actually took place, that discussion of the open meeting law and committee meetings took place months before the censure. And then the censure itself, really the open meeting law was not an issue related to the censure itself. And it was not, there aren't any allegations that there was a violation there. And into your second question, I think that the more specific case, the Whitener case, is the appropriate case here because they said specifically that discipline of a member is a core legislative act. Whitener's a fourth circuit case. Tell me how you square that with Griesenhauer. Yes, and I think that the case, that case also talked about too, the idea that this is a legislative body that is controlling its own. In Griesenhauer, we adopted a more functional approach, not just the, I think, the fourth circuit approach is, as I see it, entirely different. Sure. And I would actually argue that it's not that different because even under a functional approach, you would look at the type of action that's being taken. You would look at what is the purpose of this. And if we want to get really deep into it, yes, you would say that the discipline is a core legislative act. And one of the reasons why is perspectively. It's not a legislative act. And we would, we would disagree. We do believe it is a legislative act. And for instance, as an example, not just the court's citation to it, but also when you think about you are, you are controlling your own legislative body. You are controlling your docket. You're controlling your agenda. You're controlling how, you know, how and when people can speak. And so I would argue that that is looking perspectively. How do we want this body to function in the future? This is a policy question because they have policies on board member functioning. They have policies on saying, for instance, that the board chair is going to run meetings. They have policies saying that when the board chair rules you out of order pursuant to Robert's rules, you have to follow it. So to some extent, I would agree that, you know, you could see a situation where kind of commonplace discipline might not be a core legislative act, especially when you're talking about employees. I think a lot of those cases talk about employees, independent contractors. But here, where the only body that can take this action is the legislative body itself, I would argue that there, the Whitener case and their clear statement saying that it is a core legislative act and the other cases that we've cited from around the country saying the same thing should really rule the day, even if you look at that functional approach. What do you do, even if you get past that, what do you do about the footnote in the Court's opinion in UMBR where they basically say that this doesn't extend to municipal legislative activity? Yeah. And I think that's, I appreciate the question. And I think that any, like, reliance on that is really misplaced because it was a footnote. It was in a case about, if I'm remembering correctly, it's a case about an independent contractor really wasn't analyzing the issue. Truly, DICTA in that case wasn't the basis for their decision there. And so I would say that, you know, while that is instructive, it doesn't rule the day here. And that the legislative immunity analysis should go further than that. And we really should look at the other cases that we've cited. And we've, you know, briefed quite deeply on the idea of the legislative immunity applying here. And it is kind of a two-part test. Is there legislative immunity? And then I do think we have to look at, was this a legislative act? And I think on both counts, that's right. You know, I was wondering about what the reasoning for that carve-off from that footnote is. And I thought that opposing counsel gave a pretty good account. I thought it was sovereign immunity. And it may well be partially sovereign immunity. But I actually think it goes hand in hand with Monell, now that I think about it. Monell allows municipal liability. And then when you add the fact that you're really suing the entity, the municipality, when you're doing an official capacity suit, certainly legislative immunity wouldn't apply to the municipality. So why should it apply to a suit that is in effect the municipality, which I think is maybe what the court was saying. And so, you know, if you have a response to that, I'd love to hear it. I do, yeah. And I think that the reason why and the carve-out and the difference there would be that the same reasons for legislative immunity in a lawsuit against the, you know, in a personal capacity, are there as well in the official capacity. That it's still the idea of, you know, legislators should be able to legislate without fear of being pulled into a court to have to go through depositions, have to go through trial to talk about why they voted for something. So that the whole purpose and reason behind legislative immunity would apply in both contexts. And then, yes, I think the question is separate on the entity itself, then we're probably looking more at Monell. I think there's still an argument to be made that in a true legislative action like this, like we would argue this is, that the legislative immunity should also apply to the district. But I do think that we do have to look at Monell in this case as well. And I think on the Monell factors, we think that we would, you know, we've briefed on this, we've talked about this, that the Monell even here, we've not met that standard to prove that there was a constitutional violation at this stage. And also we have significant briefing on the question of whether they have done enough to plead this kind of animus and retaliatory animus against a quorum of the board that voted on this. And they simply have not done so. But you do agree that there's a customer policy, given the fact that you had a policymaking board making the decision? I'm sorry. That there's at least a customer policy which underlies the Monell claim, because the board is a policymaking entity. I mean, I just want to make sure that's not the table. Because the district court relied on it. That was, the district court said, look, there's no policy here. Or at least hinted strongly at that. Yeah. And I think that there are absolutely situations. And I think that the case law, the Ponombar case, would say that a single decision of a board could, it may, I believe the exact language was may, lead to liability. So that that is a possibility. However, I think here we have not done enough to establish that, that Monell would say that we violated Monell or that we should, you know, proceed on that, on that basis. I do want to talk briefly. I think that the, as the district court rightly decided, I do think there is a legislative immunity. They have not met their Monell standard here. However, even if you wanted to look at the merits, we think that it's pretty clear that the case should be, should stay dismissed and that you should affirm the court. I think number one, to point directly to a statement that was made, we do not necessarily agree that there was no protected activity here. I think in the record, looking at whether or not this, you know, this activity was protected, we think that this was speech that was subject to content neutral time, place, and manner restrictions outlined in board policy, see board policy 203 that's in the record. And it discusses how she was unwilling to accept direction and rulings from the board in disrupting the meeting. So that it is not necessarily a, that there are first amendment claims there. It's not necessarily protected activity. She was disciplined for her conduct and violations of board policies. We also think that if you get to the no adverse action piece, that's very strong for the district as well on this three-part test, because first of all, the censure, we think that the Wilson case definitively determines that a censure is not an adverse action. On the committee meeting restrictions, I think it's helpful to again point out that that actually took place months before the resolution and before the, before the censure. And this was also not targeted at her. This was for the entire advisory committees. And so it wasn't necessarily targeted at her. And there wasn't really protected activity. Wasn't it also pled that she was removed from committees? Yes. That's targeted at her. That was the third piece. Yes. I was going to, I was going to talk about the adverse actions as censure, the committee restriction, and the removal from the committee. And on the removal piece, I do think that, you know, it's important to point out again that these advisory committees are advisory. And they are appointed essentially based on the whim of the board chair. The board chair gets to determine who's going to be on these policies. And so there is not any type of right to be on this committee membership. And when you look at the language from the, from the Wilson case talking about what could potentially rise to this level of adverse action, they talk about preventing someone from doing their job. And when someone can be put on these advisory committees on a whim, that's obviously not preventing them from doing their job if they're not on those committees. And I think another argument in that fashion is the board is not, board member A is not prevented from doing their job because they're not on policy committee or they're not on athletics committee. They're still doing their job over here as a board member because board members have the right to say those committees are advisory only. They don't get to And we are going to look at this, and I want as much information as I need in order to vote on this because ultimately that is the job, is voting on it at the board meeting. I've reached the end of my time. Thank you. Thank you, Mr. Helmers. Ms. O'Keefe, would you allow Mr. Dickey two minutes in rebuttal, please? I got it. Thank you. Thank you for the two minutes. I just want to start out by pointing out again, all the parties seem to agree there's no mootness as it relates to the claims for declaratory relief for nominal damages under Issa Boogham versus Przhevsky. That's a hard one to spell, and I think that as well we have maybe a difference of opinion, of course, about mootness for prospective and injunctive relief with opposing counsel, but I think that those issues are well briefed and with the additional facts the Court has, I think the Court has enough to make a decision on the future-looking relief that we're seeking. And I would also note there's a comment made about part of the resolution of the relating to non-speech conduct. I would just encourage the Court to read the whole resolution, and I would, of course, encourage the Court to read that in the same context of our complaint. We pointed out to the Court the portions that are clearly aimed at speech, and I know that these things can be drafted, of course, in a way that dresses up some speech as conduct, but we see it as by and large aimed at polysorcan speech. Paragraph 91 of the complaint makes it really clear as to where these speech elements of polysorcan advocacy were targeted by the school district. As it relates to the open meeting law that Judge Grunder asked about, we didn't allege that the open meeting law was violated at the moment the resolution was passed, but what we did allege is that this resolution just kind of came up out of nowhere with no discussion of it in public at all, and then the board members didn't have any comment, didn't vote on it, or if they voted on it after basically no comment and polysorcan said, put them to their proof and said, show me, and that no one came forward with anything. So the genesis of this resolution is certainly something that we wonder about as to where it came from, but we haven't alleged that the resolution itself was passed in violation of the open meeting law. If I can make one last quick statement about adverse action here. Under the Wilson case, this is the next step. This is the question is, does this kind of activity rise beyond mere censure, which is the only thing the Wilson case is looking at is mere censure. And I would say that in the complaint, as we have pleaded it, again, this could be a fact dispute that might be resolved at summary judgment, but in the complaint we pleaded that these committees and that stripping someone of committee assignments does take away the trappings and the privileges of office that the Wilson court thought of. And with that, I would ask for reversal. Thank you, Mr. Dickey. Thank you, Your Honor. The court appreciates both counsel's appearance and argument. Case is submitted and we'll issue an opinion in due course. That completes our argument docket. The court before a different panel will be in recess until 9 a.m. tomorrow morning. And Judge Smith, we should be ready in five minutes or so. I'll be ready. Thank you, Your Honor.